STATE OF NEBRASKA, APPELLEE, V. PATRICK L. FRASER, APPELLANT.

430 N.W.2d 512

Filed October 14, 1988.    No. 87-1081.

Thomas M. Kenney, Douglas County Public Defender, and Thomas C. Riley for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

GRANT, J.

This is an appeal from the district court for Douglas County. The defendant-appellant, Patrick L. Fraser, was charged by information with first degree sexual assault and use of a weapon to commit a felony. He pled not guilty to both counts.

The case was tried before a jury. Defendant admitted that he had sexual intercourse with the complainant on the date in question, but alleged that he had done so with her consent. During the State's closing argument, defense counsel moved for a mistrial based on statements made by the prosecutor. That motion was overruled. The jury returned verdicts of guilty on both counts, and the defendant's subsequent motion for new trial was overruled. He was sentenced to a term of 6 to 9 years' imprisonment on count I and 2 to 3 years' imprisonment on count II, with the sentences to run consecutively. Defendant appeals to this court, assigning as error the action of the district court in denying his motion for a mistrial based on the improper statements made by the prosecutor during final argument. We reverse and remand for a new trial.

The record discloses the following. On August 6, 1986, at approximately 4:15 a.m., the victim called the Douglas County sheriff's office and reported that she had just been sexually assaulted in her trailer home in Elk City, Nebraska. She told the investigating officers that although she could not see her assailant because it was too dark, he had threatened her with a serrated knife during the incident, and she believed he had driven away in a U-Haul van.

The officers first made contact with the defendant at his residence in rural Elkhorn, after observing a U-Haul van

parked at that location. A serrated knife was found near the van. Defendant was arrested on an outstanding traffic warrant and taken to the Douglas County sheriff's office for questioning.

The victim subsequently made a voice identification of the defendant. She later recognized him as the delivery man for a local florist and as a patron in the Ponderosa Bar, her place of employment, a few weeks after Mother's Day in 1986. Although the victim testified she did not otherwise personally know the defendant, he testified that they met in the Ponderosa Bar during January or February 1986; that he and the victim developed a "friendship"; and that they had engaged in sexual intercourse twice (once in the victim's trailer home, where she lived with her husband and daughter, and once in the defendant's truck) before the August 6 incident. The defendant also admitted he had sexual intercourse with the victim on August 6, 1986, but claimed it was a consensual act.

The error alleged in this appeal stems from the testimony of witnesses called by the State. Defendant's mother testified that in the late evening of August 6, she had gone to the Ponderosa Bar "[t]o see what that was all about" and do some investigating. She then met Gena Anderson, the defendant's girlfriend, at the bar, and the two went to the Kwik Shop in Elkhorn, where the victim's husband worked at night. In response to the prosecutor's question as to whether she made any allegations to the husband, defendant's mother testified, "Based on the opinion I had formed at the bar, I told him that she [the victim] was a tramp."

Anderson then testified that she had lived with defendant for approximately 5 years and was living with him in Anderson's home in rural Elkhorn on August 6, 1986. She was the owner of Fawn Hollow Floral & Antiques in Elkhorn and had on occasion employed the defendant as a delivery man. On August 5, 1986, the defendant had moved furniture to Council Bluffs, Iowa, for Anderson, in a U-Haul van. Anderson stayed in Council Bluffs, and defendant testified he returned to the Elk City area that night. Anderson's testimony generally contradicted a statement given by defendant to the sheriff's office.

She also testified that she met defendant's mother at the Ponderosa Bar on August 6; that the two then went to the Kwik Shop in Elkhorn, where the victim's husband worked; and that there defendant's mother created a scene and made derogatory accusations about the victim and her conduct.

On cross-examination of Anderson, on the subject of the confrontation of the victim's husband, defendant elicited the following testimony:

Q. Did you personally say anything to the clerk at the Kwik Shop?

A. Yes.

Q. Without relating what he said, what did you tell him?

A. I told him that he knew that this whole thing was utterly ridiculous, that he had to know that his wife was having an affair before this, and that this was not the first one, therefore, he knew that there could be no rape involved.

The subject of the victim's conduct was again inquired into by the prosecutor on his redirect examination of Anderson. During the redirect examination, defense counsel objected to a question asked by the State as leading, and the court stated that the prosecutor had, in effect, requested "the Court to declare the witness in legal terms a legally hostile witness. The Court has so declared and the objection is overruled." The court was following the requirements of Neb. Rev. Stat. § 27-611(3) (Reissue 1985). The record then shows the following:

Q. Didn't you just tell us earlier that you told him that there was an ongoing affair going on between his wife and-

A. No, I did not, I said that I had heard that she had been having affairs with other people. I did not say ongoing affair with Mr. Fraser.

. . . .

Q. . . . . Let's assume for the sake of argument that what you are saying, these rumors, let's say it was true that she had had an affair with Mr. A, B and C, but not with the defendant, how does that clear the defendant of a rape charge?

A. It doesn't . . . .

The defendant's assignment of error relates directly to the prosecutor's remarks, relating to the foregoing testimony, made during the State's rebuttal argument to the jury. The record contains defendant's argument to the jury and the rebuttal portion of the State's closing argument. No contention is made by the State that the prosecutor's remarks hereinafter set out were in response to anything said by defendant's counsel in his argument. The doctrine of invited response does not apply. See *United States v. Young*, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985).

In the statement complained of, the prosecutor said to the jury:

> She [the victim] has to sit up there and have every tiny aspect of her background gone over with a microscope. And what came out, that she got up and goofed around on a stage one time in April of 1986, and that was it. That was it. So that's the scarlet letter, that's what they are trying to paint for you. That is ridiculous, absolutely absurd.
>
> *The best became my witness, declared hostile by the judge, there were rumors, rumors. Well I can guarantee you if rumors had any substance to them, we would have had witnesses.*
>
> MR. RILEY: I'm going to object to that and move for a mistrial. . . .
>
> THE COURT: . . . [Y]our objection is sustained, your motion for mistrial is overruled. The defendant doesn't have to prove anything, the jury has been told before and will be told again in written instructions.

(Emphasis supplied.)

The emphasized statement was improper. The defense in this case was consent. Neb. Rev. Stat. § 28-321(2) (Reissue 1985) provides:

> Evidence of a victim's past sexual behavior shall not be admissible unless such evidence is: (a) Evidence of past sexual behavior with persons other than the defendant, offered by the defendant upon the issue whether the defendant was or was not, with respect to the victim, the source of any physical evidence, including but not limited to, semen, injury, blood, saliva, and hair . . . .

Although no actual evidence was offered, both the State and the defendant, without objection by the adverse party, elicited hearsay testimony, which did not rise past the level of rumor or innuendo, as to the victim's past sexual behavior. In view of § 28-321, such testimony was improper. Prejudice to defendant, however, did not occur until the prosecutor chose to "guarantee" that if witnesses were available to prove the rumored conduct, "we would have had witnesses." The prosecutor knew, or should have known, that such specific evidence would not be admissible under the circumstances of this case.

The trial judge attempted to cure the error resulting from the prosecutor's statement when he immediately told the jury that "[t]he defendant doesn't have to prove anything" and when he told the jurors he would again so inform them in written instructions. The problem was, in this case, that the defendant, whether he desired to or not, could not properly adduce evidence to prove the facts that the prosecutor said defendant could prove. The prosecutor misled the jury when he so stated.

The remaining issue before us is whether this impropriety denied the defendant a fair trial. A mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury, and would thus result in preventing a fair trial. *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986). On review, reversal of a judgment may be ordered for failure of the trial court to grant a mistrial when a proper admonition or instruction to the jury, capable of removing the damaging effect of the event, is not given. See, *Wamsley v. State*, 171 Neb. 197, 106 N.W.2d 22 (1960); *Lybarger v. State*, 177 Neb. 35, 128 N.W.2d 132 (1964). We recognize that the decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. *State v. Nesbitt*, 226 Neb. 32, 409 N.W.2d 314 (1987); *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987).

Whether misconduct on the part of a prosecutor is prejudicial to the defendant depends largely on the facts of each case. *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981). The

general rule is that remarks made by the prosecutor in final argument which do not mislead or unduly influence the jury do not rise to a level sufficient to require granting a mistrial. *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985). In this case, the prosecutor's remarks did rise to the level necessitating a reversal. The prosecutor called the defendant's mother and the defendant's girlfriend as witnesses. Although those witnesses first testified on other matters, the witnesses introduced testimony as to rumors concerning "affairs" of the victim with other men. The State thus indicated such testimony was relevant and admissible. The prosecutor then identified one person who testified to such rumors as the witness "declared hostile by the judge," further pinpointing her testimony. The prosecutor left the impression with the jury that the proof of such rumors would amount to a defense of the charge against defendant and that defendant could not furnish such proof. Such an impression is obviously wrong, and the prosecutor's guarantee that such testimony could be elicited, if it existed, was improper. The defense was consent, and the prosecutor's statement was misleading.

There was ample evidence before the jury to sustain the conviction. Defendant does not contend to the contrary. There was some evidence, however, which, if believed, could have resulted in verdicts of not guilty. The evidence, although legally sufficient, did not compel verdicts of guilty. In those circumstances, we cannot say the prosecutor's remarks were harmless error. The trial court erred in not granting defendant's motion for a mistrial.

REVERSED AND REMANDED FOR A NEW TRIAL.