STATE OF NEBRASKA, APPELLEE, V. LOUIS T. PRATT, APPELLANT.
452 N.W.2d 54

Filed March 2, 1990. No. 89-147.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Defendant has appealed from his jury convictions of second degree murder and use of a firearm to commit a felony. He was sentenced to imprisonment for 15 years on the murder conviction and a consecutive term of 2 to 4 years on the firearm charge, less time served in jail.

The defendant assigns as error (1) the trial court's order overruling his motion to suppress his statements; (2) the trial court's order overruling his motion for a mistrial after the prosecutor struck a black prospective juror from the jury panel; (3) the trial court's failure to grant his motion for mistrial when the prosecutor allegedly intentionally attempted to elicit inadmissible evidence from the defendant; and (4) the trial court's action in allowing certain rebuttal evidence which the defendant claimed was not in fact rebuttal testimony. We affirm.

On the afternoon of July 5, 1988, the defendant was riding on an Omaha Metro Area Transit bus driven by Leroy Gragg. An argument developed between the defendant and the busdriver when the defendant insisted on having a window

open and the driver was just as firm on having it closed.

Unknown to the driver, the defendant had a .45-caliber handgun in his possession. A short time after their last exchange over the open window, the defendant exited the bus and spoke some words to the driver. After the defendant got off the bus, the driver drove the bus up over the curb and onto the sidewalk, striking the defendant and knocking him to the ground. The busdriver then drove off.

An off-duty police officer who saw this incident stopped the bus a few blocks down the street. While the bus was stopped, the defendant caught up with the bus, stood in front of the bus, fired a shot through the windshield, and killed Gragg.

The defendant was taken into custody on July 6, 1988. Prior to questioning, according to the testimony of the State's witnesses, defendant was advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). When asked if he was willing to make a statement, the defendant responded, "I'll talk to you up to a point." Defendant did not refuse to answer questions, nor did he request a lawyer. Although he gave the police a detailed statement, he did not admit that he fired the shot that killed Gragg. Prior to trial, defendant filed a motion to suppress statements he made to the police, which motion was overruled.

During selection of the jury, the prosecutor used peremptory challenges to strike two of three black prospective jurors on the initial jury panel. Defense counsel moved for a mistrial, which motion was denied after the trial court determined that the strikes had not been racially motivated.

During the State's case in chief, a certain witness testified that she saw defendant open the window after Gragg had slammed it shut the first time. During cross-examination the defendant denied ever opening the window. The prosecutor then asked defendant, "Now, you heard Mrs. Haynes testify that she watched while you sat back there and he closed the window, you opened it, he closed it and you opened it; that's not true?" Defense counsel objected to this question as invading the province of the jury, which objection was sustained. But see Neb. Rev. Stat. § 27-704 (Reissue 1989). The prosecutor then asked whether testimony to the effect that defendant opened

the window would be mistaken, and defense counsel objected again and moved for a mistrial based on prosecutorial misconduct. The motion for mistrial was overruled.

One of the police officers who questioned defendant testified that defendant was read his rights before he was questioned. Defendant testified that the police talked to him for 15 to 20 minutes before they read him his rights. During cross-examination the prosecutor asked defendant, "Then what the detectives told us with respect to that is not true?" Defense counsel objected to the question as invading the province of the jury and moved for a mistrial again. Although the objection was sustained, the motion for mistrial was overruled.

After the defense rested, the prosecutor offered rebuttal testimony from the other officer who participated in the questioning of defendant, relating to the procedure followed in advising defendant of his rights. Defense counsel objected to the testimony as improper rebuttal, which objection was overruled.

Addressing his first assignment of error, defendant cites us to *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). *Edwards* held that when an accused asserts the right to counsel, interrogation must cease until counsel is present *or* the accused initiates further communications. In *Smith v. Illinois*, 469 U.S. 91, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984), the Court recognized that sometimes the request for counsel may be ambiguous or equivocal.

Defendant argues that his statement that he would talk up to a point was not an unambiguous limited request for counsel, see *Connecticut v. Barrett*, 479 U.S. 523, 107 S. Ct. 828, 93 L. Ed. 2d 920 (1987), but, rather, was an ambiguous statement. He urges this court to adopt the rule followed in several other jurisdictions regarding ambiguous or equivocal requests for counsel, i.e., that all interrogation must cease except for narrow questioning designed to clarify the request. See, *Howard v. Pung,* 862 F.2d 1348, 1350 (8th Cir. 1988) (" 'I don't think I'd better say any more—'til I have an attorney' "); *United States v. Fouche,* 776 F.2d 1398, '1405 (9th Cir. 1985) (defendant said he " 'might want to talk to a lawyer' "); *United States v.*

*Cherry*, 733 F.2d 1124, 1127 (5th Cir. 1984) (" ' "Maybe I should talk to an attorney before I make a further statement," ' ." and " 'Why should I not get an attorney?' "); *United States v. Lame*, 716 F.2d 515, 517 (8th Cir. 1983) (" 'maybe I should get a lawyer' "); *State v. Moulds*, 105 Idaho 880, 889, 673 P.2d 1074, 1083 (1983) (" 'Maybe I need an attorney' " or " 'I think I need an attorney' "); *Daniel v. State*, 644 P.2d 172, 174 (Wyo. 1982) (defendant said he would " 'probably like to have an attorney present' "); *Nash v. Estelle*, 597 F.2d 513, 516 (5th Cir. 1979) (" 'I would like to have a lawyer, but I'd rather talk to you' ").

Defendant's response in this instance, "I'll talk to you up to a point," was neither a general request for counsel nor an ambiguous or equivocal request for counsel that should have been clarified. Nothing in the response or the circumstances leading up to it justify a conclusion that defendant desired the assistance of counsel. Defendant's response does not even closely approximate ambiguous statements that have been held to have been equivocal requests for counsel.

The prosecution peremptorily struck two of the three black prospective jurors from the panel. The defendant, who was black, moved for a mistrial or, in the alternative, that some of the black venirepersons be seated.

The trial court proceeded under the ruling in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and concluded that defendant had made a prima facie case of discrimination in the selection of the jury. Having done so, the court shifted the burden to the State to provide a neutral explanation for the challenges, which explanation must be related to the particular case to be tried. See, *State v. Rowe*, 228 Neb. 663, 423 N.W.2d 782 (1988); *State v. Walton*, 227 Neb. 559, 418 N.W.2d 589 (1988). The trial court did not need to determine if the offered explanations were reasonable, but only that they were nondiscriminatory and constitutionally permissible. *State v. Walton, supra.*

As to one black juror, General Young, the prosecutor stated that Young indicated that he was tired and did not particularly want to be there. The prosecutor felt that the juror seemed to have difficulty expressing himself or fully understanding what

was said, and the prosecutor was concerned about his ability to pay attention to the evidence. It was also the prosecutor's opinion that any feelings of resentment about being a juror might be directed toward the government, which had summoned him and which the prosecutor represented. Regarding the juror Betty Kellogg, the prosecutor explained that there were several women in the jury panel who were single and never married. He was concerned that there might be some attraction to the defendant, and he struck several single women, including Kellogg, for that reason.

There were six single, never-married females on the jury panel, four of whom were peremptorily stricken—three by the prosecutor and one by defense counsel. The prosecutor also stated that he had intended to strike a fourth single white female who was earlier stricken by the defense, and had planned to strike still another single white female, but had only one strike remaining, which he felt he needed to use to strike another prospective juror. One black juror remained on the jury, and a second black juror was picked as an alternate juror who, the brief of one of the parties indicates, participated in deliberations.

Although a criminal defendant has no right to a petit jury composed in whole or in part of persons of his or her own race, *Strauder v. West Virginia*, 100 U.S. 303, 25 L. Ed. 664 (1879), the equal protection clause of U.S. Const. amend. XIV bars a prosecutor from challenging potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky, supra* at 476 U.S. at 89.

The trial court's determination that there was no purposeful discrimination in the prosecutor's use of his or her peremptory challenges is a factual determination which this court will reverse only if clearly erroneous. *State v. Venable*, 233 Neb. 309, 444 N.W.2d 907 (1989). The same rule is to be applied in reviewing the trial court's determination as to the adequacy of the State's "neutral explanation" of its challenges. *State v. Walton, supra*. The trial court's finding in this regard was not clearly erroneous.

Defendant claims prosecutorial misconduct with the questions put to defendant "Now, you heard Mrs. Haynes testify that she watched while you sat back there and he closed the window, you opened it, he closed it and you opened it; that's not true?" and "Then what the detectives told us with respect to that is not true?" Objections made by the defense were both sustained, but the motions for mistrial were overruled.

According to the defendant, if he had answered the questions, he would have been commenting on the veracity of the State's witnesses. In the context used, these questions hardly seem improper. However, assuming that they were, certainly no prejudice occurred, considering the fact that answers were not allowed. These questions fell far short of the statement made by the prosecutor in *Froding v. State*, 125 Neb. 322, 326, 250 N.W. 91, 93 (1933), during cross-examination of a defendant, " 'Babe, you are lying and you know it. . . .' " This court held that although the question was improper, the record did not disclose that it was prejudicial to the defendants.

Whether misconduct, if there was any, on the part of a prosecutor is prejudicial to the defendant depends largely on the facts of each case. *State v. Fraser*, 230 Neb. 157, 430 N.W.2d 512 (1988).

" 'A conviction will not be set aside unless the defendant meets his burden of showing that the error claimed created actual prejudice rather than merely the possibility of prejudice.' " *State v. Gregory*, 220 Neb. 778, 783, 371 N.W.2d 754, 759 (1985). As in *Gregory*, there is no showing here that the questions in and of themselves were actually prejudicial to defendant. " 'Although the prosecutor was less than artful at times, it does not appear that his conduct was meant to, or did, inflame the prejudices or excite the passions of the jury against the defendant.' " *State v. Ellis*, 208 Neb. 379, 398, 303 N.W.2d 741, 753 (1981).

As to the last claimed error, Officer Wilson testified during the State's case in chief that the defendant was informed of his rights before questioning began. On direct examination, defendant testified that the police did not read the rights form to him before they talked to him. In rebuttal the prosecutor offered the testimony of Officer Briese regarding the procedure

followed in obtaining defendant's statement. He testified that the rights form was read to defendant before he was questioned and that at no time during the interview did defendant request an attorney.

Defendant argues that Officer Briese's testimony was not proper rebuttal testimony, that it should have been offered in the State's case in chief, and that it was merely cumulative to evidence offered in the case in chief. Although this technically may be correct, nevertheless, a similar argument was rejected in *State v. Swillie*, 218 Neb. 551, 357 N.W.2d 212 (1984).

Competent testimony which tends to dispute the testimony offered on behalf of the accused as to a material fact is proper rebuttal testimony. *State v. Gregory, supra; State v. Swillie, supra*.

The judgment of the district court is affirmed.

AFFIRMED.