STANLEY JACOX, APPELLANT, V.
ROBERT PEGLER, APPELLEE.
665 N.W.2d 607
Filed July 18, 2003.   No. S-02-907.

Mark T. Bestul and Vincent M. Powers, of Vincent M. Powers & Associates, for appellant.

Timothy E. Clarke, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
### NATURE OF CASE
In this appeal from a motor vehicle personal injury action, Stanley Jacox asserts that the district court for Lancaster County erred when it rejected his claim of discrimination in the use of a peremptory challenge employed by appellee, Robert Pegler. Jacox claims that the potential juror, who was African-American, was struck from the venire because of his race, in violation of the

Equal Protection Clause of the U.S. Constitution. Finding no merit to this sole assignment of error, we affirm.

## STATEMENT OF FACTS

Jacox and Pegler were involved in a traffic accident in Lancaster County on July 27, 2000. Jacox filed a petition against Pegler seeking damages for injuries he incurred in the accident, and Pegler filed a counterclaim against Jacox.

The case proceeded to trial. Jury selection began on July 26, 2002. During voir dire, Jacox informed the court outside the hearing of the potential jurors that he was claiming that Pegler's use of a peremptory challenge to strike juror No. 9 was discriminatory. Jacox asserted that Pegler "struck Juror No. 9 because of race." Jacox also asserted that he needed only to show that juror No. 9 was African-American and that then the burden was upon Pegler "to articulate a particularly non-discriminatory reason for striking him." The court excused the potential jurors in order to consider the matter outside their presence.

In support of his claim, Jacox reiterated that he challenged the striking of juror No. 9 because juror No. 9 was African-American. Pegler's attorney responded to this claim as follows:

> First, and most importantly, on two separate occasions during voir dire examination I noticed [juror No. 9] had his eyes closed as if he was dozing or nodding off and not paying attention.
>
> My concern in this case, Judge, is there will be all sorts of talk about Jury Instructions and burden of proof and if the jurors can follow the Jury Instructions. And, most importantly, there is going to be critical testimony from both the plaintiff and the defendant as to what happened. And I don't want a juror who can't even get through voir dire examination without closing his eyes to be one of the individuals who is responsible for deciding my client's case.
>
> Even during [Jacox's attorney's] examination, I think he had asked a question of [juror No. 9] and [juror No. 9] was looking off somewhere else. And he said, [juror No. 9], I'm asking a question of you, and brought his attention back to [Jacox's attorney] and then answered the question.
>
> That's the sole and only reason I struck [juror No. 9].

Jacox's attorney thereafter stated:

I don't think that is a legitimate non-discriminatory reason. For example, as I recall my question of — of [juror No. 9], I didn't pronounce his name properly and once I did, he responded. I also had my eyes closed during parts of . . . voir dire [by Pegler's attorney]. I was thinking. Perhaps that's true, he was thinking as well.

. . . It's been my experience when there is a . . . juror who is inattentive or sleeping, that's something that the Court notes, it's the Court's job. I don't think that's the situation here.

This particular juror was as attentive as the majority of the white jurors . . . .

On the record before us, Jacox's allegation of discrimination in the use of a peremptory challenge is not supported by sworn testimony, exhibits, stipulations, admissions, or judicial notice. Neither counsel nor the court recited into the record information regarding the racial or other relevant breakdown of the venire, the challenges by both parties, or the jury actually selected. Without comment, the district court announced that Jacox's challenge was overruled.

Jury voir dire then continued. A jury was impaneled and sworn in, and the trial proceeded. Following deliberation, the jury returned a verdict in favor of Pegler on Jacox's claim and a verdict in favor of Jacox on Pegler's counterclaim. The district court entered judgment in accordance with the jury's verdict and dismissed the case with prejudice. Jacox appeals.

## ASSIGNMENT OF ERROR

Jacox asserts that the district court erred in overruling his challenge to Pegler's striking of juror No. 9 from the venire and in failing to make a determination on the record as to the adequacy of Pegler's proffered nondiscriminatory explanation for such striking.

## STANDARDS OF REVIEW

■ A trial court's determination of whether a party has established purposeful discrimination in jury selection is a finding of fact and is entitled to appropriate deference from an appellate court because such a finding will largely turn on evaluation of

credibility. *State v. Bronson,* 242 Neb. 931, 496 N.W.2d 882 (1993). The trial court's determination that there was no purposeful discrimination in the party's use of his or her peremptory challenges is a factual determination which this court will reverse only if clearly erroneous. *State v. Pratt,* 234 Neb. 596, 452 N.W.2d 54 (1990).

A trial court's determination of the adequacy of a party's "neutral explanation" of its peremptory challenges will not be reversed on appeal unless clearly erroneous. *State v. Myers,* 258 Neb. 300, 603 N.W.2d 378 (1999).

## ANALYSIS

On appeal, Jacox's assignment of error relates solely to the rejection of his claim that Pegler's use of a peremptory challenge to strike from the venire juror No. 9 was discriminatory. Following our review of the record, we determine that Jacox failed to meet his burden of proving purposeful discrimination and that therefore, the district court's ruling rejecting his claim of discrimination by Pegler in the use of his peremptory challenge was not clearly erroneous.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the U.S. Supreme Court held that the Equal Protection Clause forbids prosecutors from using peremptory challenges to strike potential jurors solely on account of their race. In *Batson* and cases subsequent thereto, the Court set up a three-step process for evaluating a claim by a defendant that a prosecutor had used peremptory challenges in a racially discriminatory manner. Initially, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. If the requisite showing has been made, the prosecutor must then articulate a race-neutral explanation for striking the juror in question. Finally, the trial court must determine whether the defendant has carried his or her burden of proving purposeful discrimination. See *Hernandez v. New York,* 500 U.S. 352, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991).

In *Batson,* the Court stated that in order to establish a prima facie case of purposeful discrimination in jury selection, the defendant must show (1) that he or she is a member of a cognizable racial group, (2) that the prosecutor exercised peremptory

challenges to exclude from the venire members of the defendant's race, and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude potential jurors on account of their race. However, in *Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), the Court held that a defendant, regardless of his or her race, could object to a prosecutor's race-based exclusion of potential jurors. The Court reasoned that a race-based exclusion violated the equal protection rights of the excluded juror and that a defendant had third-party standing to raise the excluded juror's equal protection claim. The Court indicated that racial identity between the defendant and the excused potential juror, which it had emphasized in *Batson*, might make it easier to establish a prima facie case of wrongful discrimination but that racial identity might not be relevant in other cases and was not a prerequisite to making a prima facie case of purposeful discrimination.

With regard to the burden on the prosecution to come forward with a race-neutral explanation, the Court stated in *Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995), that "[t]he second step of [the *Batson* test] does not demand an explanation that is persuasive, or even plausible." Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

The Court stated that it was not until the third step of the *Batson* test that the persuasiveness of the proffered race-neutral explanation became relevant. At that stage, the trial court must determine whether the opponent of the strike from the venire has carried his or her burden of establishing purposeful discrimination, and implausible or fantastic justifications may be found to be pretexts for purposeful discrimination. The Court emphasized that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. at 768.

In *Hernandez v. New York, supra*, the Court held that a trial court's finding on the issue of discriminatory intent in connection with a *Batson* challenge would not be overturned on appeal unless the determination was clearly erroneous. The Court stated:

 Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because . . . the finding "largely will turn on evaluation of credibility." . . . In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

(Citations omitted.) *Hernandez v. New York*, 500 U.S. 352, 365, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991).

 ■ In *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991), the Court extended the holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), to civil cases. The Court held that private litigants in a civil case may not use peremptory challenges to exclude jurors on account of their race. The Court reasoned that such exclusion violated the equal protection rights of the challenged jurors and that a private litigant's use of peremptory challenges in a civil case constituted "state action" because such use had its source in state authority and the litigant made extensive use of the state's procedures with overt, significant assistance from the state. 500 U.S. at 623. In reasoning consistent with *Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), the Court also held that litigants in a civil case had standing to raise the equal protection claims of jurors excluded on account of their race. Finally, the Court stated that the three-step approach set forth in *Batson* for determining whether racial discrimination has been established is applicable in the civil context and that determining whether a prima facie case has been established requires consideration of all relevant circumstances, including whether there has been a pattern of strikes against members of a particular race.

 In Nebraska, this court has heretofore considered *Batson* challenges in the context of criminal cases. By virtue of this opinion, we now apply the principles initially announced in *Batson* and

subsequently expounded upon in federal and Nebraska cases to civil actions.

■ Jacox assigns error to the trial court's overruling of his challenge and in particular to the trial court's failure to make a specific determination regarding whether Pegler's proffered explanation was a legitimate nondiscriminatory reason for excluding juror No. 9. With regard to the lack of findings, we take this opportunity to encourage trial courts to make specific findings on the record at each step of a *Batson* challenge, but nevertheless observe that the failure to do so does not in and of itself require reversal. In this regard, we note that where the trial court has failed to make specific *Batson* findings, we have implied such findings where the record permits. See *State v. Walton*, 227 Neb. 559, 418 N.W.2d 589 (1988). Employing the reasoning in *Walton*, we determine that although the trial court did not explicitly state that Pegler's proffered explanations were race neutral, the trial court in this case impliedly found that Pegler had articulated race-neutral explanations when it effectively proceeded to the third step under *Batson* and overruled Jacox's challenge.

With respect to Jacox's argument that the trial court erred in rejecting his claim that Pegler's use of a peremptory challenge was discriminatory, we note that the trial court's ruling on the *Batson* challenge in this case is to be reviewed under a clearly erroneous standard. See, *Hernandez v. New York*, 500 U.S. 352, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991); *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999). In the instant case, the trial court did not specifically comment on the adequacy of Jacox's prima facie case of discrimination. However, whether Jacox made a prima facie showing is a moot issue in this case because Pegler immediately offered a race-neutral explanation before the trial court could comment on the sufficiency of Jacox's prima facie showing. The U.S. Supreme Court has stated that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 U.S. at 359. See, also, *Goode v. Shoukfeh*, 943 S.W.2d 441 (Tex. 1997) (making

similar statement in civil case). We adopt this reasoning, and given the fact that Pegler offered a race-neutral explanation, we do not comment on the adequacy of Jacox's prima facie showing of discrimination.

With regard to the second step of the *Batson* test, as we have discussed above, the trial court impliedly found that Pegler's proffered explanations were race neutral. Under the U.S. Supreme Court's holding in *Purkett v. Elem*, 514 U.S. 765, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995), the proffered explanation in the second step need not be persuasive or even plausible, it simply needs to be race neutral. Pegler asserted that he struck the juror from the venire because the juror's eyes were closed during part of the voir dire and the juror appeared inattentive. These explanations were race neutral, and the trial court did not err regarding the second step of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

In prior criminal cases, this court and the Nebraska Court of Appeals have determined that where a juror was struck from the venire because the State was concerned about the juror's ability to pay adequate attention during trial, such race-neutral explanation was adequate. See, *State v. Myers, supra* (prosecutor concerned about elderly and disabled juror's ability to pay attention during trial and to follow directions); *State v. Pratt*, 234 Neb. 596, 452 N.W.2d 54 (1990) (prosecutor concerned that juror who appeared tired would not pay attention); *State v. Edwards*, 2 Neb. App. 149, 507 N.W.2d 506 (1993) (prosecutor concerned about juror's ability to process evidence where juror was not alert and was unable to clearly answer questions). The explanation given by Pegler in this case was clearly race neutral. Whether the explanation was a pretext for discrimination was a matter to be considered in the third step of the *Batson* test.

Proceeding to the third step of *Batson*, the burden was on Jacox to prove facts necessary to show the existence of discrimination. See *Purkett v. Elem, supra*. The district court's rejection of Jacox's claim of discrimination embodies an implied finding under the third step of the *Batson* test that Jacox did not carry his burden of proving purposeful discrimination. On the record before us, we cannot say that the trial court clearly erred in this regard.

The third step under *Batson* necessarily involves evaluating the strike proponent's proffered race-neutral explanation in the context of the jury selection as it actually occurred in the case. See, generally, *Batson v. Kentucky, supra.* The U.S. Supreme Court has given the following illustrative examples of circumstances which could give rise to an inference of discrimination: "[A] 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose." *Batson v. Kentucky*, 476 U.S. at 97. Although the record before us indicates that juror No. 9 was African-American, the record provides no other facts or a context from which we are able on appeal to infer purposeful discrimination. There is no indication in the record with respect to the racial or other relevant breakdown of the venire, of the challenges by both parties, or of the jury actually selected. It is fundamental that a party claiming discrimination in the use of peremptory challenges make a record which supports an inference of discriminatory purpose. See 50A C.J.S. *Juries* § 456 (1997). "Facts must be included in the record by sworn testimony, exhibits, stipulations, admissions, or judicial notice." *Id.* at 494. In the absence of such a record, we cannot say that the trial court was clearly erroneous in rejecting Jacox's *Batson* challenge.

## CONCLUSION

On the record before us, we determine that the district court was not clearly erroneous in rejecting Jacox's *Batson* challenge to Pegler's use of a peremptory challenge to strike a potential juror from the venire who was African-American. We therefore affirm the order of the district court.

AFFIRMED.