STATE OF NEBRASKA, APPELLEE, V.
JAMES LOWE, APPELLANT.
677 N.W.2d 178

Filed April 9, 2004.   No. S-03-445.

David B. Eubanks, of Pahlke, Smith, Snyder, Petitt & Eubanks, G.P., for appellant.

Jon Bruning, Attorney General, Susan J. Gustafson, and Erin E. Leuenberger, Senior Certified Law Student, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
## NATURE OF CASE
In his appeal from a criminal conviction, James Lowe contends that the trial court erred when it rejected his claim of discrimination in the use of a peremptory challenge employed by the prosecution. Lowe claims that several male jurors were struck from the venire because of gender in violation of the Equal Protection Clause of the U.S. Constitution.

## BACKGROUND
An information was filed in this case on December 18, 2002, charging Lowe with sexual assault of a child, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-320.01(2) (Cum. Supp. 2002). The case proceeded to trial, and jury selection began on March 12, 2003. After voir dire was completed but before the jury was sworn, Lowe made a motion pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), outside the presence of the jury. Lowe asserted that the State had exercised all six of its peremptory challenges—all of them striking males. The trial court asked the prosecution to provide a gender-neutral reason for striking the six jurors in question. The prosecution responded as follows:

Well, Your Honor, I think it's important to have a mix, I don't want all men or all women and basically there's a majority of men on the jury the way it is and I think you need to have some women on a jury on a case like this who bring a different sort of experience into the jury room than just having men. Oftentimes women in our society do provide a lot of the child caretaking and I think that's a legitimate reason for the State to try to have some women on a panel. If I'd have struck women I'd almost have a 12 person panel here, it just happens to be that there seems to be more men on this mix of people than there are women and so that's the mix that are left, I think is a legitimate mix for a 12 person jury.

Lowe's attorney responded, stating:

Well, Judge, I don't know under Batson if that qualifies as an explanation for neutral striking of exclusively men to the exclusion of females. And essentially what I hear [the

prosecutor] saying is, yeah, I wanted to get off as many men as I could so I can get as many women on the jury and that's not neutral, that isn't neutral gender obviously.

The trial court thereafter overruled Lowe's motion, stating:

We'll, here's what it seems to me and I rule with probably not a lot of background on this because it has not come up but the idea of Batson and cases that extended Batson to other areas were allegations of denial of equal protection and so we end up with a jury of five of one gender and 7 of another. I can't see that that would be a violation of the equal protection.

And in reviewing the strikes, the State struck [males] but, on the other hand, all of the defense strikes, the ones that were taken were all [females] and, again, we end up with a fairly equal blend of males and women which from my perspective anyway would not deny equal protection. In fact, if anything, it would comport to equal protection of having that type of a mix.

A review of the record reveals that the jury list for February and March 2003 consisted of 30 males and 30 females. Of those venirepersons appearing on the general jury list, 29 were assigned to the jury list in this case, 15 of which were males and 14 females. The record confirms that 6 females and 6 males were impaneled and sworn in this matter. The record does not contain a transcript or otherwise reveal the nature of the questions posed to members of the jury panel during voir dire.

Following a jury trial, Lowe was found guilty and sentenced to probation. Lowe appeals.

## ASSIGNMENT OF ERROR

For his sole assignment of error, Lowe assigns, restated, that the trial court erred in overruling Lowe's *Batson* challenge which alleged that the State intentionally discriminated on the basis of gender in the jury selection process.

## STANDARD OF REVIEW

A trial court's determination of whether a party has established purposeful discrimination in jury selection is a finding of fact and is entitled to appropriate deference from an appellate

court because such a finding will largely turn on evaluation of credibility. The trial court's determination that there was no purposeful discrimination in the party's use of his or her peremptory challenges is a factual determination which an appellate court will reverse only if clearly erroneous. *Jacox v. Pegler*, 266 Neb. 410, 665 N.W.2d 607 (2003); *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993).

■ A trial court's determination of the adequacy of a party's "neutral explanation" of its peremptory challenges will not be reversed on appeal unless clearly erroneous. *Jacox v. Pegler, supra; State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999).

■ An appellate court decides a question of law independently of the conclusion reached by the trial court. *Malena v. Marriott International*, 264 Neb. 759, 651 N.W.2d 850 (2002).

## ANALYSIS

### APPLICATION OF BATSON TEST

In *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the U.S. Supreme Court held that the Equal Protection Clause of the 14th Amendment forbids prosecutors from using peremptory challenges to strike potential jurors solely on account of their race. See, also, *Jacox v. Pegler, supra.* The Court extended this holding to gender-related discrimination in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). See, also, *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). *J.E.B.* involved a suit for determination of paternity and child support. When the matter was called for trial, the trial court assembled a panel of 36 potential jurors, 12 males and 24 females. After the trial court excused three jurors for cause, the state then used 9 of its 10 peremptory challenges to remove male jurors. The petitioner used all but one of his strikes to remove female jurors. All of the remaining jurors were female. Before the jury was impaneled, the petitioner challenged the state's peremptory strikes on the ground that they were exercised against male jurors solely on the basis of gender in violation of the Equal Protection Clause of the 14th Amendment. The trial court rejected the petitioner's claim and impaneled the jury.

The U.S. Supreme Court held that it is axiomatic that intentional discrimination on the basis of gender in jury selection by

state actors violates the Equal Protection Clause. This is particularly so where the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women. *J.E.B. v. Alabama ex rel. T.B., supra.* The Court further stated that gender, like race, is an unconstitutional proxy for juror competence and impartiality. The Court noted that its decision and supporting rationale in *Hoyt v. Florida,* 368 U.S. 57, 82 S. Ct. 159, 7 L. Ed. 2d 118 (1961), in which the Court upheld a state statute exempting women from serving on juries on the ground that women, unlike men, occupied a unique position " 'as the center of home and family life,' " was later repudiated by the Court in *Taylor v. Louisiana,* 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975). *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. at 134.

In *J.E.B.,* the State of Alabama maintained that its decision to exercise its peremptory challenges to strike effectually all the males from the jury was

> "based upon the perception, supported by history, that men otherwise totally qualified to serve upon a jury in any case might be more sympathetic and receptive to the arguments of a man alleged in a paternity action to be the father of an out-of-wedlock child, while women equally qualified to serve upon a jury might be more sympathetic and receptive to the arguments of the complaining witness who bore the child."

511 U.S. at 137-38. The Court rejected this justification as embodying " 'the very stereotype the law condemns.' " 511 U.S. at 138.

The Court continued, holding that "the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man." *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 146, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994).

In *Jacox v. Pegler,* 266 Neb. 410, 665 N.W.2d 607 (2003), we applied the three-step process established in *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), for evaluating whether a party has used peremptory challenges

in a racially discriminatory manner. We stated that the defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. If the requisite showing has been made, the prosecutor must then articulate a race-neutral explanation for striking the juror in question. Finally, the trial court must determine whether the defendant has carried his or her burden of proving purposeful discrimination. We apply this same three-step process for evaluating whether the prosecution in this case discriminated on the basis of gender in exercising all six of its peremptory challenges to strike males from the venire. See *J.E.B. v. Alabama ex rel. T.B., supra* (applying *Batson* three-step process to gender discrimination claims).

■ With regard to the burden on the prosecution to come forward with a gender-neutral explanation, " '[t]he second step of [the *Batson* test] does not demand an explanation that is persuasive, or even plausible.' " *Jacox v. Pegler*, 266 Neb. at 414, 665 N.W.2d at 612. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed gender neutral. See *id.* (articulating this principle with respect to race discrimination). The gender-neutral explanation "need not rise to the level of a 'for cause' challenge; rather, it merely must be based on a juror characteristic other than gender." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. at 145.

■ With respect to the first step of the *Batson* test, we note that the trial court did not issue written or oral findings or otherwise comment regarding whether Lowe met his prima facie burden of showing the prosecution engaged in gender discrimination in the exercise of its peremptory challenges. However, whether Lowe made a prima facie showing is a moot issue in this case. The prosecution, at the trial court's request, offered a purported gender-neutral explanation before the trial court commented on the sufficiency of Lowe's prima facie showing. We noted in *Jacox* that " '[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.' " *Jacox v. Pegler*, 266 Neb. at 416, 665 N.W.2d at 613 (quoting *Hernandez v. New York*, 500 U.S. 352, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991)). Accordingly, because the

prosecution offered a purported gender-neutral explanation, we do not comment on the adequacy of Lowe's prima facie showing of discrimination.

In this case, the trial court's application of a harmless error analysis presumes the court found that the prosecution engaged in gender-based discrimination in exercising all six of its peremptory strikes to exclude males from the venire. The trial court, however, did not expressly find that the prosecution failed to offer a gender-neutral reason for its peremptory challenges or that the explanation, while gender-neutral, was a pretext. Thus, we must independently determine whether the trial court's belief, implicit in its ruling, that the prosecution engaged in gender-based discrimination is supported in law. See *State v. Gamez-Lira*, 264 Neb. 96, 645 N.W.2d 562 (2002) (where record adequately demonstrates that decision of trial court is correct, although such correctness is based on ground or reason different from that assigned by trial court, appellate court will affirm). In so doing, we review the trial court's decision under a clearly erroneous standard. *Jacox v. Pegler*, 266 Neb. 410, 665 N.W.2d 607 (2003).

The State contends, under the second step of the *Batson* test, that the prosecution provided a gender-neutral explanation for striking the jurors in question. At the *Batson* hearing, the prosecution explained that its purpose for using its peremptory strikes in the manner in question was not to remove all of the males from the jury, but was to have a mixture of both males and females on the final jury panel. The prosecution told the court that if it would have struck female jurors, the overwhelming majority of the final jury panel would have been males. The prosecution stated that it was important to have a mix of females and males on this jury.

The U.S. Supreme Court, in *Taylor v. Louisiana*, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975), rejected the State of Louisiana's purported facially neutral desire to achieve gender balance in the final jury panel. In *Taylor*, a case in which a Louisiana law excluding women from jury service was declared unconstitutional, the Court held that a jury must be drawn from venires representative of the community. As such, the Court stated, women as a class could no longer be excluded. *Id.* In so holding, the Court emphasized that "in holding that petit juries must be drawn from a source fairly representative of the

community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." 419 U.S. at 538.

The State further argues that the prosecution also expressed at the *Batson* hearing the importance in this case of having females on the jury because of the "child caretaking" experience females often possess. The State's explanation for exercising its peremptory strikes in the manner in question is anything but gender neutral. It invokes the very "invidious, archaic, and overbroad stereotypes about the relative abilities of men and women" that the U.S. Supreme Court rejected in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 131, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994).

Indeed, in *J.E.B.*, the U.S. Supreme Court expressly recognized its repudiation of the rationale it had previously relied upon to uphold state statutes exempting women from serving on juries on the ground that women, unlike men, occupied a unique position " 'as the center of home and family life.' " *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. at 134. In the present case, the State's explanation regarding the relative child caretaking experience of women is not too dissimilar from the explanation offered by the State of Louisiana and rejected by the Court in *J.E.B.* There, the state justified its decision to strike males from the jury in a paternity action because women might be more sympathetic and receptive to the arguments of the complaining witness who bore the child. *J.E.B. v. Alabama ex rel. T.B., supra.* The U.S. Supreme Court rejected this justification as embodying " 'the very stereotype the law condemns.' " 511 U.S. at 138. Here, the State's explanation that "[o]ftentimes women in our society do provide a lot of the child caretaking and I think that's a legitimate reason for the State to try to have some women on a panel" typifies the very stereotype rejected by the U.S. Supreme Court in *J.E.B.*

The Utah Court of Appeals, in *State v. Chatwin*, 58 P.3d 867 (Utah App. 2002), similarly rejected an explanation offered by the prosecution of achieving gender balance. In *Chatwin*, the prosecutor explained that he struck a male venireperson because he felt that " 'this jury would be better able to deliberate the evidence that I anticipate[d] presenting to it if [the jury was] balanced between men and women. I therefore made efforts to take

men off of the jury.'" 58 P.3d at 868. The trial court denied the defendant's challenge to the prosecutor's strike, finding the prosecutor sufficiently justified exercising the strike. Applying the U.S. Supreme Court's decision in *J.E.B. v. Alabama ex rel. T.B.,* *supra,* the Utah Court of Appeals reversed. The court of appeals addressed the state's argument that the prosecutor's intent was to seat a jury composed of a fair cross section of the community rather than to remove jurors based on gender. Citing *J.E.B.* and *Batson,* the court of appeals stated that "the Constitution does not guarantee either the State or a defendant a jury comprised of any specific gender balance or composition. . . . Rather, the Constitution guarantees only that every defendant will be tried by a jury whose members are selected pursuant to 'nondiscriminatory criteria.'" (Citations omitted.) *State v. Chatwin,* 58 P.3d at 872. The court determined that the prosecutor failed to provide a facially neutral explanation for its peremptory strike. The court held that dismissing a potential juror on the basis of gender in an attempt to achieve gender balance in the jury was discriminatory and in violation of the Equal Protection Clause.

Other jurisdictions have similarly concluded that exercising peremptory strikes in an attempt to achieve gender balance in the final jury panel constitutes a gender discriminatory motivation. See, *U.S. v. Tokars,* 95 F.3d 1520 (11th Cir. 1996); *People v. Hudson,* 195 Ill. 2d 117, 745 N.E.2d 1246, 253 Ill. Dec. 712 (2001).

Based on the foregoing, we determine that the State failed to offer a gender-neutral explanation for using all six of its peremptory challenges to strike males. Accordingly, we need not address the third step under *Batson* and we conclude that the State improperly exercised all of its peremptory challenges on the basis of gender in violation of the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. We turn now to a discussion of whether the trial court's decision to apply a harmless error analysis was proper.

## TRIAL ERROR VERSUS STRUCTURAL ERROR

During the hearing on the *Batson* motion, the trial court implicitly found that the prosecution engaged in gender discrimination in the exercise of its peremptory challenges. The trial court, applying a harmless error analysis, nonetheless overruled Lowe's

*Batson* motion, finding no equal protection violation because the final jury panel consisted of an equal number of males and females. We have never before addressed the issue of whether a harmless error analysis is appropriate in the context of a *Batson* challenge, and neither party has meaningfully addressed the issue in their respective briefs to this court. Accordingly, we must determine whether the trial court was correct to apply a harmless error analysis to a *Batson* challenge.

In *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000), we recognized two types of constitutional infirmities established and later refined by the U.S. Supreme Court in *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991): trial errors and structural errors. In *Bjorklund*, we noted the U.S. Supreme Court defined structural errors as those so " 'affecting the framework within which the trial proceeds,' that they demand automatic reversal." 258 Neb. at 504, 604 N.W.2d at 225. The Court in *Fulminante* defined trial errors as those " 'which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' " *State v. Bjorklund*, 258 Neb. at 504, 604 N.W.2d at 225. We noted that the U.S. Supreme Court limited structural errors to a few very specific categories—total deprivation of counsel, trial before a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, denial of the right to self-representation at trial, and denial of the right to a public trial. We also observed that the Court listed several errors, many of constitutional magnitude, which are properly termed trial errors and subject to harmless error review. Among those listed were the denial of counsel at a preliminary hearing, the admission of a defendant's coerced statement, and a jury instruction containing an erroneous conclusive presumption.

The federal courts of appeals that have considered the question have generally treated *Batson* violations as structural and thus subject to per se reversal. See, *U.S. v. Serino*, 163 F.3d 91, 93 (1st Cir. 1998) (finding *Batson* violation and reversing "without proof of prejudice or proceeding to consider harmlessness"); *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir. 1998) (holding that

"[b]ecause the effects of racial discrimination during voir dire 'may persist through the whole course of the trial proceedings,'" *Batson* challenge structural error "not subject to harmless error review"); *Ramseur v. Beyer*, 983 F.2d 1215 (3d Cir. 1992) (holding harmless error analysis inappropriate in cases involving discrimination in jury selection process); *U.S. v. Broussard*, 987 F.2d 215 (5th Cir. 1993) (declining to apply harmless error analysis to trial court's misapplication of *Batson* test), *abrogated on other grounds, J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994); *U.S. v. McFerron*, 163 F.3d 952, 956 (6th Cir. 1998) (finding *Batson* violation involves "'structural error'" not subject to harmless error analysis); *Rosa v. Peters*, 36 F.3d 625 (7th Cir. 1994) (opining U.S. Supreme Court would not characterize *Batson* violation as trial error and concluding harmless error analysis inapplicable); *Ford v. Norris*, 67 F.3d 162 (8th Cir. 1995) (holding constitutional error involving *Batson* violation not subject to harmless error analysis); *U.S. v. Annigoni*, 96 F.3d 1132 (9th Cir. 1996) (holding proper remedy for improper use of peremptory challenge under *Batson* is automatic reversal); *U.S. v. Thompson*, 827 F.2d 1254 (9th Cir. 1987) (finding harmless error inapplicable to *Batson* violation); *Davis v. Secretary for Dept. of Corrections*, 341 F.3d 1310 (11th Cir. 2003) (concluding harmless error review inapplicable in context of *Batson* violations); Pamela S. Karban, *Race, Rights, and Remedies in Criminal Adjudication*, 96 Mich. L. Rev. 2001 (1998).

In *Davis v. Secretary for Dept. of Corrections, supra,* the 11th Circuit observed that the U.S. Supreme Court has not yet suggested that discriminatory exclusion of prospective jurors is subject to harmless error review. The 11th Circuit noted, however, that the U.S. Supreme Court has on several occasions reversed convictions without first determining whether the improper exclusion of jurors made any difference in the outcome of the trial. For example, the 11th Circuit noted that in *Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), the U.S. Supreme Court reversed, and remanded based upon a finding that the defendant was wrongfully barred from raising a *Batson* claim. *Davis v. Secretary for Dept. of Corrections, supra.* In *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the Court ordered that the defendant's conviction be reversed if

the defendant, on remand, was able to establish a prima facie case of discrimination and the state was unable to provide a neutral explanation for the challenged strikes. The Court has also required automatic reversal in a similar context of discrimination in the selection of members of a grand jury. *Batson v. Kentucky, supra* (citing *Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); *Rose v. Mitchell*, 443 U.S. 545, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979)).

The 11th Circuit further opined that the U.S. Supreme Court has expressly recognized that discrimination in the exercise of peremptory challenges harms not only the defendant's interests, but also the interests of jurors themselves in not being excluded improperly from jury service, as well as the interest of the community in the unbiased administration of justice. *Davis v. Secretary for Dept. of Corrections, supra* (citing *Georgia v. McCollum*, 505 U.S. 42, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992); *Powers v. Ohio, supra*; and *Batson v. Kentucky, supra*). The court stated that the doctrine of third party standing enables defendants to act on behalf of improperly excluded jurors by raising *Batson* claims in their stead, even when the defendant and the improperly excluded juror are not of the same race. *Davis v. Secretary for Dept. of Corrections, supra* (citing *Powers v. Ohio, supra*). The court further observed that a defendant is no more entitled to exercise peremptory strikes on a racially discriminatory basis than the prosecution. As such, the court maintained, the harm proscribed by *Batson* must redound to interests beyond the defendant's if it constrains the defendant's own selection of trial strategies. *Davis v. Secretary for Dept. of Corrections, supra* (citing *Georgia v. McCollum, supra*). Accordingly, the 11th Circuit concluded that a *Batson* violation warrants automatic reversal and is not subject to harmless error review.

The Eighth Circuit reached a similar conclusion in *Ford v. Norris*, 67 F.3d 162 (8th Cir. 1995). In *Ford*, the court concluded that a constitutional error involving the race-based exclusion of jurors infects the entire trial process itself and is, therefore, a structural error not subject to a harmless error analysis. The court stated:

> "A prosecutor's wrongful exclusion of a juror by a race-based peremptory challenge is a constitutional violation

committed in open court at the outset of the proceedings. The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause. The *voir dire* phase of the trial represents the jurors' first introduction to the substantive factual and legal issues in a case. The influence of the *voir dire* process may persist through the whole course of the trial proceedings." *Ford v. Norris*, 67 F.3d at 171. The Eighth Circuit concluded that when jurors are excluded solely because of racial considerations, the irregularity may pervade all the proceedings that follow.

In the instant case, the fact that an equal number of males and females appeared on the final jury panel is inapposite. The U.S. Supreme Court stated in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994), that it is irrelevant to the constitutionality of gender-based peremptory challenges that women, unlike African-Americans, are not in the numerical minority and therefore are likely to remain on the jury if each side uses its peremptory challenges in an equally discriminatory fashion. The Court stated:

> Because the right to nondiscriminatory jury selection procedures belongs to the potential jurors, as well as to the litigants, the possibility that members of both genders will get on the jury despite the intentional discrimination is beside the point. The exclusion of even one juror for impermissible reasons harms that juror and undermines public confidence in the fairness of the system.

511 U.S. at 142 n.13.

■ We agree with the rationale of the federal circuit courts of appeals that have held that a *Batson* violation is a structural error not subject to harmless error review. Accordingly, we hold that the trial court erred in applying a harmless error analysis to Lowe's *Batson* challenge. It is of no consequence that the composition of the final jury panel in this case consisted of an equal number of men and women.

## CONCLUSION

We conclude that the prosecution impermissibly exercised its peremptory challenges on the basis of gender in violation of the

Equal Protection Clause. Applying a structural error analysis, we reverse the decision of the trial court and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.