IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,590

STATE OF KANSAS,
*Appellee*,

v.

MAURICE A. BROWN,
*Appellant.*

SYLLABUS BY THE COURT

1.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the State from using peremptory strikes to remove prospective jurors based on their race.

2.

When a defendant challenges the State's exercise of peremptory strikes under the Equal Protection Clause, the issue is analyzed under the three-step process set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). At the first step of the *Batson* analysis, the defendant must make a prima facie showing that the State has exercised its peremptory challenges in a discriminatory fashion, e.g., based on race. An appellate court has unlimited review of the district court's finding on this step. If the defendant makes a prima facie showing, the burden of production shifts to the State to provide a non-discriminatory reason for the challenged strike. An appellate court reviews a district court's ruling on this step for an abuse of discretion. Once the State has proffered non-discriminatory reasons for its strikes, the defendant bears the burden of showing purposeful discrimination. An appellate court also reviews the district court's ruling on this step for an abuse of discretion.

1

3.

　　The burden is on the party alleging discriminatory selection of the jurors from the venire to prove the existence of purposeful discrimination.

4.

　　The prohibition against racial discrimination in jury selection precludes the State from striking jurors sharing the racial identity of the defendant based on an assumption that those jurors will be partial to the defendant based on their shared race.

5.

　　If the defendant or the district court do not correct errors in the prosecutor's statements of fact supporting his or her reasons for exercising peremptory challenges, these facts are considered to be true for purposes of determining whether the prosecutor set forth a race-neutral reason for the strike.

6.

　　The prosecution cannot purposefully discriminate where it honestly but mistakenly believes the nondiscriminatory reasons given for its peremptory strike.

7.

　　In determining whether the State exercised its peremptory strikes based on race, a district court may consider numerous factors, including statistical evidence, side-by-side comparisons of jurors, and the prosecutor's misrepresentation of the record. But it is not the district court's duty to investigate these factors sua sponte. Rather, the defendant has the burden to create the record of relevant facts and to prove his or her case to the district court.

8.

The provisions of the revised Kansas Sentencing Guidelines Act, K.S.A. 2020 Supp. 21-6801 et seq., that authorize the district court to make criminal history findings for purposes of imposing a sentence do not violate section 5 of the Kansas Constitution Bill of Rights because such judicial fact-findings do not impair the traditional functions of the jury in Kansas criminal proceedings.

9.

Kansas' criminal restitution statutes do not trigger the Sixth Amendment protections identified in *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny.

10.

Kansas' criminal restitution scheme implicates a defendant's right to trial by jury under section 5 of the Kansas Constitution Bill of Rights by converting restitution orders, in which a judge determines the damages proximately caused by the criminal act, into civil judgments, thus bypassing the traditional function of juries to determine civil damages. However, the proper remedy for this constitutional impropriety is to sever the offending portions of the statutory scheme rather than vacate every judicially determined restitution order. Once the unconstitutional provisions of that scheme are severed, the original restitution order is constitutionally firm. Therefore, a criminal defendant will not be faced with a civil judgment for criminal restitution unless it has been obtained separately through a civil cause of action.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 17, 2020. Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed November 12, 2021. Judgment of the Court of Appeals affirming in part and vacating in part the judgment of the district court is affirmed. Judgment of the district court is affirmed in part and vacated in part, and the case is remanded with directions.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, argued the cause, and *Jennifer C. Bates* and *Sam Schirer*, of the same office, were on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

WALL, J.:  A jury convicted Maurice A. Brown of two counts of aggravated robbery and eight counts of kidnapping in connection with the robbery of two Red Skye Wireless phone stores in Wichita. The district court imposed a presumptive 200-month prison sentence and ordered Brown to pay restitution. The Court of Appeals affirmed Brown's convictions and his restitution order, but it vacated the sentence after concluding that the district court had erroneously classified Brown's prior Michigan juvenile adjudication for armed robbery as a person felony. *State v. Brown*, No. 120,590, 2020 WL 1897361, at *7, 10 (Kan. App. 2020) (unpublished opinion).

Brown petitioned for our review, arguing the Court of Appeals erred in affirming his convictions and rejecting other constitutional challenges to his sentence and restitution order. More specifically, Brown contends the Court of Appeals erred in affirming his convictions because the State exercised peremptory challenges based on the race of prospective jurors, violating his equal protection rights guaranteed under the Fourteenth Amendment to the United States Constitution. Brown also claims that his sentence, imposed under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq., violates section 5 of the Kansas Constitution Bill of Rights because the KSGA permits a district court judge (rather than a jury) to make criminal history findings for purposes of sentencing. Finally, Brown argues Kansas' criminal restitution scheme violates his jury trial rights under section 5 and the Sixth Amendment to the United States Constitution because the scheme authorizes a district court judge to determine restitution damages.

4

After a thorough review of these issues, we conclude that Brown failed to carry his burden to prove intentional discrimination in the State's exercise of peremptory challenges, as required under the burden-shifting framework established in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Moreover, Brown's constitutional challenges to his sentence and restitution order are resolved by our recent opinions addressing identical claims. Specifically, in *State v. Albano*, 313 Kan. 638, 657, 487 P.3d 750 (2021), we held the KSGA does not violate section 5. Moreover, in *State v. Arnett*, 314 Kan. ___, 2021 WL 4806611, at *3 (No. 112,572, filed October 15, 2021), we held that Kansas' criminal restitution scheme does not violate the Sixth Amendment. Though the restitution scheme does implicate section 5, we concluded that the offending provisions are severable. 314 Kan. at ___, 2021 WL 4806611, at *7-8. And once the unconstitutional provisions are severed, the original restitution order satisfies constitutional scrutiny. 314 Kan. at ___, 2021 WL 4806611, at *8.

Accordingly, we affirm the decision of the Court of Appeals and remand the case to the district court for resentencing consistent with that opinion.

FACTS AND PROCEDURAL BACKGROUND

The Court of Appeals outlined the facts related to Brown's crimes of conviction. *Brown*, 2020 WL 1897361, at *1. We need only briefly highlight those facts relevant to the procedural development of Brown's *Batson* challenge, given the nature of the issues Brown raised in his petition for review.

Jury selection for Brown's trial began in late October 2018. After two days of voir dire, the State used five of its eight peremptory challenges to strike four African-American prospective jurors and one mixed-race prospective juror from the jury panel. In response, Brown (who is African-American) raised a *Batson* challenge, arguing the

5

State's racially motivated intent was evident from the sheer number of minority jurors the State had excluded. In response, the State offered several race-neutral reasons for these strikes. The district court found that the statements and actions of the prospective jurors supported the State's race-neutral explanations and concluded that Brown had failed to prove intentional discrimination.

Brown renewed the *Batson* challenge in his motion for new trial, which the district court took up at sentencing. Brown reiterated his claim that the number of minority jurors excluded demonstrated that the State exercised its peremptory challenges based on race. The State advanced the same race-neutral explanations for striking these prospective jurors (four African-American prospective jurors and one mixed-race prospective juror) and further observed that three Hispanic jurors served on the jury and one African-American had served as an alternate juror. The district court upheld its previous ruling on the *Batson* challenge.

In imposing sentence, the district court determined that Brown had a criminal history score of D based on his prior convictions, which included a prior Michigan juvenile adjudication for armed robbery that the district court classified as a person felony for sentencing purposes. The district court sentenced Brown to 200 months in prison and ordered him to pay over $83,000 in criminal restitution.

Before the Court of Appeals, Brown argued that the district court had erred in denying his *Batson* challenge, and for the first time on appeal, he challenged the constitutionality of his sentence and restitution order. Brown also argued that the district court had incorrectly calculated his criminal history score, rendering his sentence illegal.

The Court of Appeals concluded that Brown's illegal sentence claim was meritorious and thus vacated the sentence and remanded the matter for resentencing. 2020 WL 1897361, at *7, 10. But the panel rejected Brown's arguments regarding his

*Batson* challenge and the constitutionality of his sentence and restitution order. 2020 WL 1897361, at *4, 8-10.

Brown timely petitioned for review, and we granted review of all three claims the Court of Appeals rejected. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review.).

ANALYSIS

I. *Brown Failed to Demonstrate that the District Court Erred in Denying the* Batson *Challenge*

Brown contends the district court and Court of Appeals erred in denying his *Batson* challenge because the State exercised its peremptory strikes to remove all African-American prospective jurors and one mixed-race prospective juror. Brown also claims the State offered an inherently discriminatory reason for striking one of those jurors. He contends these facts, along with other statistical data, demonstrate that the State exercised its peremptory strikes with discriminatory intent. The State contends the district court did not abuse its discretion in determining that the challenged peremptory strikes were constitutionally permissible because Brown failed to meet his burden to show purposeful discrimination.

A. *Legal Framework and Standard of Review*

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the State from using peremptory strikes to remove prospective jurors based on their race. *Batson*, 476 U.S. at 89. If a defendant suspects the State has

7

used its peremptory strikes in a racially discriminatory manner, he or she may challenge those strikes under *Batson*.

When a *Batson* challenge is asserted, the issue is analyzed under a three-step process. First, a defendant objecting to the State's exercise of peremptory challenges "must first establish a prima facie case of purposeful discrimination during jury selection by demonstrating that relevant circumstances raise an inference that the State exercised peremptory challenges based upon the prospective juror's race." *State v. Bolton*, 271 Kan. 538, 540, 23 P.3d 824 (2001).

Second, if such a showing is made, the burden then shifts to the State to articulate a non-discriminatory reason for the challenged strike. *State v. Angelo*, 287 Kan. 262, 271, 197 P.3d 337 (2008). This step

> "does not demand a prosecutor's explanation that is persuasive, or even plausible, but merely facially valid. Further, unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Accordingly, the ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike. [Citations omitted.]" *State v. Pham*, 281 Kan. 1227, 1237, 136 P.3d 919 (2006).

Finally, "'[i]n the third step, the district court determines whether the opponent has carried the burden of proving purposeful discrimination.'" *State v. Gonzalez*, 311 Kan. 281, 302, 460 P.3d 348 (2020). In other words, "once the prosecution offers a race-neutral explanation, the defendant bears the burden of showing pretext, which 'requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it.' [Citation omitted.]" *State v. Gonzalez-Sandoval*, 309 Kan. 113, 126, 431 P.3d 850 (2018). As with any equal protection claim, a defendant who lodges a *Batson* challenge has the burden to prove the existence of purposeful discrimination. 309 Kan. at 121 (quoting *Batson*, 476 U.S. at 93).

8

On review, each of these steps is subject to its own standard of review. *State v. Hill*, 290 Kan. 339, 358, 228 P.3d 1027 (2010). "The standard of review of the first step—the prima facie showing on the basis of race—is a question of legal sufficiency subject to plenary review." *Pham*, 281 Kan. at 1237.

For the second step—whether the State offered a neutral explanation for its strikes—we review the district court's ruling for an abuse of discretion. *State v. Sledd*, 250 Kan. 15, 21, 825 P.2d 114 (1992).

For the third step—the district court's decision on the ultimate question of whether the defendant has carried the burden of proving purposeful discrimination—our review is "greatly deferential because the determination is factual." *Pham*, 281 Kan. at 1237.

> "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson*, the finding 'largely will turn on evaluation of credibility.' In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' [Citations omitted.]" *Hernandez v. New York*, 500 U.S. 352, 365, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991).

On appeal, "we review the decision under an abuse of discretion standard—that is, to determine if the trial court made an error of law, made an error of fact, or was otherwise arbitrary, fanciful, or unreasonable." *Gonzalez-Sandoval*, 309 Kan. at 126-27; see also *State v. McCullough*, 293 Kan. 970, 992, 270 P.3d 1142 (2012) ("This step hinges on credibility determinations because usually there is limited evidence on the issue, and the best evidence is often the demeanor of the party exercising the challenge. As such, it falls

within the trial court's province to decide, and that decision is reviewed under an abuse of discretion standard.").

### B. *Brown Made a Prima Facie Showing of Purposeful Discrimination*

Under the first step of the *Batson* analysis, Brown was required to make a prima facie showing that the State's peremptory challenges were based on race. The record confirms the State used four of its eight peremptory strikes on African-American prospective jurors, leaving one African-American to serve as the alternate juror. The State also used a fifth peremptory strike on a mixed-race prospective juror. We agree with the district court that the number of minority prospective jurors struck from the final jury panel supports a prima facie case of purposeful discrimination on the part of the State. *Pham*, 281 Kan. at 1238 (concluding that removal of two Hispanic jurors established prima facie case).

Moreover, here the State offered race-neutral explanations for the challenged strikes and the district court ruled on whether the State had intentionally discriminated. In such circumstances, "the first prong of the *Batson* analysis is moot." *Gonzalez*, 311 Kan. at 302-03.

### C. *The State Provided Race-Neutral Reasons for Its Peremptory Strikes*

Once Brown made his prima facie showing, the burden of production shifted to the State to provide race-neutral reasons for its peremptory strikes. The State proffered several race-neutral reasons for striking each of the African-American and mixed-race prospective jurors. Brown challenges only the State's explanation for exercising a peremptory challenge against one juror, J.N. See *Flowers v. Mississippi*, 588 U.S. __, 139 S. Ct. 2228, 2244, 204 L. Ed. 2d 638 (2019) ("The Constitution forbids striking even a single prospective juror for a discriminatory purpose."). Accordingly, our analysis

10

focuses on the State's explanation for exercising a peremptory challenge against this juror.

In response to Brown's *Batson* challenge, the State proffered several reasons for striking J.N., including that she expressed concerns about convicting and imprisoning innocent people, and she had a "microscopic view" of the criminal justice system. The State also asserted that J.N. constantly smiled while defense counsel was talking, she did not fully disclose the nature of her employment on her jury information card, and she watched procedural crime dramas. Finally, the State claimed J.N. had a "bias" or a "preference" in favor of African-Americans.

On appeal, Brown takes issue only with this last reason, arguing J.N. never expressed a bias toward African-Americans, and the State simply assumed she would be biased because she was mixed race. As Brown correctly notes, the prohibition against racial discrimination in jury selection precludes the State from striking jurors sharing the racial identity of the defendant based on an assumption that those jurors will be partial to the defendant based on their shared race. *Flowers*, 139 S. Ct. at 2241-42. Such an assumption is inherently discriminatory because it "arise[s] solely from the jurors' race." *Batson*, 476 U.S. at 98. Thus, if the State merely assumed J.N. would be racially biased because of her racial identity, that rationale would not be race neutral.

The State argues that its reason for striking J.N. derived not from an assumption based on her race but from J.N.'s own comments. Specifically, the State points to an answer J.N. gave during voir dire. When defense counsel asked the prospective jurors if they had any concerns about wrongfully convicting an innocent person, J.N. responded:

> "With the way we are in America right now, I have a great fear of that. You hear about people, you know what we all hear about, people being in prison and then it was a case of mistaken identity. It was a coincidence, the wrong place at the wrong time, maybe

not following up with all of the evidence or whatever it was. At this time it is so important to do follow-up and look at all of the evidence. And we as our responsibility to look at everything. That's why I am in fear of putting an innocent person away for— it is a great fear because especially right now, no offense or whatever, but putting people of color especially right now. And my mom is—I am of mixed race and so that is so important to me that we get everything right.

"Do it right because we want to follow the steps and do everything by the book as we should. And if that is what it takes, then that's how we should do it because putting an innocent person away is the worst thing that can happen to that person. Think of the time they spend in jail, the years they have. It is like it will make them seek revenge if they want to and it will be a vicious cycle. So in doing the right thing and doing it like we should, look at all of the evidence and . . . there is nothing else involved other than the evidence, that's how we should do it."

The State argues this response supported the prosecutor's belief that J.N. expressed bias or preference based on race because her fear of convicting innocent people was particularly heightened with regard to people of color and that her mixed-race background factored into this fear.

Based on the record before us, the prosecutor's claim regarding J.N.'s racial bias appears to have resulted not from assumptions based on J.N.'s race, but rather from the prosecutor's interpretation of J.N.'s own testimony and inferences the State drew from it. In his briefing, Brown seemingly concedes that the State's explanation for striking J.N. was founded on her testimony, rather than unconstitutional assumptions and stereotypes based on her race or racial identity, but he suggests the State intentionally misrepresented J.N.'s testimony in crafting this race-neutral explanation.

But Brown did not raise such an argument before the district court. See *State v. Trotter*, 280 Kan. 800, 818-19, 127 P.3d 972 (2006) (party bringing *Batson* challenge bears burden to develop factual record). And even if he had, "dissonance between a

12

prosecutor's race-neutral explanation and the transcript of voir dire does not prove that the prosecutor lied to conceal racial discrimination." *People v. Wilson*, 351 P.3d 1126, 1132, (Colo. 2015).

Because Brown did not develop a factual record on this argument, we are left with only J.N.'s actual testimony, as reflected in the cold transcript. And this record suggests the prosecutor did not intentionally mischaracterize J.N.'s testimony. Instead, the State crafted a race-neutral explanation founded on inferences it drew from her testimony. On their face, J.N.'s remarks demonstrate her heightened concern about wrongfully convicting people of color, in part, because she herself is "of mixed race." From these statements, the prosecutor inferred J.N.'s bias or preference.

In hindsight, one could certainly question the reasonableness of the State's inference and argue this race-neutral explanation overstates J.N.'s actual testimony. However, it is legally significant that neither Brown nor the district court did so contemporaneously. "If the defendant or the trial court do not correct errors in the prosecutor's statements of fact supporting his or her reasons for exercising peremptory challenges, these facts are considered to be true for purposes of determining whether the prosecutor set forth a race-neutral reason for the strike." See *Trotter*, 280 Kan. at 815.

Given that neither Brown nor the district court corrected the prosecutor, we presume for the purposes of our analysis that J.N. expressed a bias toward African-Americans or, at the very least, that the prosecutor honestly believed that such an inference was supported by J.N.'s testimony. Either way, the result is the same—the State's reason for striking J.N. was founded on her own testimony, not her race. See *Hernandez*, 500 U.S. at 360 ("A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror."). Accordingly, we agree with the Court of Appeals and conclude that the district court did not abuse its discretion in finding that the State met its burden to provide a race-neutral

13

reason for striking J.N. See *Gonzalez-Sandoval*, 309 Kan. at 125 ("The prosecution cannot *purposefully* discriminate where it honestly but mistakenly believes the nondiscriminatory reasons given for its peremptory strike.").

### D. Brown Failed to Meet His Burden to Show Purposeful Discrimination

Once the State proffered race-neutral reasons for the challenged strikes, Brown bore the burden of showing those reasons were pretext to conceal a discriminatory intent. *Gonzalez-Sandoval*, 309 Kan. at 126. In determining whether the State's proffered reasons are pretextual, the district court must "'assess the plausibility of that reason in light of all evidence with a bearing on it.'" 309 Kan. at 126 (quoting *Miller-El v. Dretke*, 545 U.S. 231, 252, 125 S. Ct. 2317, 162 L. Ed. 2d 196 [2005]). And we remain mindful that the district court's determination on this step is factual in nature and will often turn on an evaluation of the prosecutor's credibility. Because district courts are in a better position to determine credibility, appellate courts are highly deferential when reviewing the district court's findings on this step. *Pham*, 281 Kan. at 1237.

Here, the district court found that the actions and statements of the prospective jurors supported the State's race-neutral explanations for the strikes and that Brown had failed to show purposeful discrimination. On appeal, Brown argues that several factors undermine the district court's finding on this step. Brown asserts that a side-by-side comparison reveals two of the nonwhite jurors the State excluded had similarities to white jurors who were not removed, and that the prosecutor intentionally misrepresented the record when he said J.N. had a bias toward African-Americans. Brown contends that these two factors, along with statistical evidence regarding the number of minority jurors struck, demonstrates that the district court's finding was erroneous.

In determining whether the State exercised its peremptory strikes based on race, a district court may consider numerous factors, including statistical evidence, side-by-side

14

comparisons of jurors, and the prosecutor's purported misrepresentation of the record. See *Flowers*, 139 S. Ct. at 2243. But it is not the district court's duty to investigate these factors sua sponte. See *State v. Campbell*, 268 Kan. 529, 535, 997 P.2d 726 (2000) (district court does not have duty to sua sponte conduct side-by-side comparison of jurors). Rather, the "defendant has the burden to create the record of relevant facts and to prove his or her case to the trial court." *Trotter*, 280 Kan. at 818-19. Thus, the onus was on Brown to draw the district court's attention to any relevant evidence of pretext and purposeful racial discrimination.

Here, the only evidence Brown presented to the district court was that the State used four of its eight peremptory strikes to remove all the prospective African-American jurors from the final jury panel, and the State exercised a fifth peremptory challenge to remove a mixed-race juror, i.e., the same evidence Brown relied on to establish his prima facie case. In challenging the State's peremptory challenges, Brown did not offer a comparative analysis of jurors to the district court or argue that some of the nonwhite jurors the State removed also shared characteristics with unchallenged white jurors. Brown did not challenge the State's characterization of J.N.'s testimony or the inferences the State drew from it. And while Brown provides us with a statistical analysis suggesting a low probability that all African-American and mixed-race jurors could have been removed by chance, he did not present this same analysis to the district court. Nor did Brown advance any of these arguments when he renewed the *Batson* challenge as part of his motion for new trial.

We addressed a similar circumstance in *Gonzalez-Sandoval*. There, the Court of Appeals majority pointed to numerous factors and circumstances that might have suggested the State's race-neutral reasons for removing a prospective juror were pretext for discrimination. However, we concluded that the defendant's failure to raise these issues in the district court precluded the appellate court from considering them for the first time on appeal:

15

"Gonzalez-Sandoval did not raise any of these matters when making his *Batson* challenge, when arguing the issue the second day of the trial, or when arguing his motion for new trial. During the initial argument, for example, Gonzalez-Sandoval did not ask to inquire of [the prospective juror] about the basis for the State's proffer. Nor did he challenge the accuracy of the reasons given by the State in any other way. He presented nothing—either through evidence or argument—to suggest pretext. In other words, Gonzalez-Sandoval did nothing to challenge the efficacy of the State's reason or to bring the State's motive into question. If Gonzalez-Sandoval had a concern about how the State gathered information about prospective jurors or the factual accuracy of the State's proffered reason for the strike, he needed to present those arguments to the trial court. [Citation omitted.]" *Gonzalez-Sandoval*, 309 Kan. at 128.

Because Brown failed to raise these arguments before the district court, we do not consider them in determining whether the district court abused its discretion. See, e.g., *Pham*, 281 Kan. at 1239 (declining to hear defendant's argument comparing excluded jurors to retained white jurors because it was not raised before the district court).

Thus, in reviewing the third step of Brown's *Batson* challenge, we are limited to considering whether the State's exercise of five of its eight peremptory strikes to remove nonwhite prospective jurors conclusively demonstrates the State acted with discriminatory intent. Of course, these numbers could be evidence of such intent. But this court has cautioned against placing determinative significance on any one factor, even when the State removes all members of a minority group from a jury panel. *Trotter*, 280 Kan. at 812-14.

Furthermore, when ruling on a *Batson* challenge, district courts may objectively compare numbers and other facts raised by defendants, but they must also evaluate the prosecutor's credibility. 280 Kan. at 813. After Brown directed the district court's attention to the number of minority jurors struck, the prosecutor provided race-neutral

reasons for those strikes, and the district court accepted those reasons as supported by the actions and statements of the jurors. Given that Brown presented no further evidence of purposeful discrimination to the district court, under our deferential standard of review we hold the district court did not abuse its discretion in denying Brown's *Batson* challenge. See *Gonzalez-Sandoval*, 309 Kan. at 129 (concluding that defendant failed to meet his burden under the third *Batson* step where no argument or evidence offered to demonstrate State's race-neutral reason was pretext for discrimination).

## II. *The KSGA's Use of Judicial Fact-Finding to Determine a Defendant's Criminal History Does Not Implicate Section 5 of the Kansas Constitution Bill of Rights*

Next, Brown argues the KSGA, under which he was sentenced, violates our state Constitution because it allows judicial fact-finding of a defendant's criminal history for sentencing purposes.

Determining a statute's constitutionality is a question of law over which we have unlimited review. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014).

Brown brings his challenge under section 5 of the Kansas Constitution Bill of Rights, which provides: "The right of trial by jury shall be inviolate." He argues the KSGA violates section 5 because it allows the sentencing court, rather than a jury, to find the existence of prior convictions for the purpose of determining a defendant's criminal history. See K.S.A. 2020 Supp. 21-6814(a). He asserts that when the Kansas Constitution came into existence in 1859, the common law required prior convictions that increased the permissive penalty for a crime to be proven to a jury beyond a reasonable doubt. He claims this common-law right would have been preserved under section 5, and the KSGA's use of judicial fact-finding to determine a defendant's criminal history would implicate this right.

17

The Court of Appeals rejected Brown's claim. The panel acknowledged this court has rejected a similar argument in analyzing the jury trial guarantee provided under the Sixth Amendment to the United States Constitution. *Brown*, 2020 WL 1897361, at *8 (citing *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 [2002]). And the panel held that Brown failed to establish that we would interpret section 5 to require greater protections than the Sixth Amendment. *Brown*, 2020 WL 1897361, at *8.

On review, Brown argues the Court of Appeals erred in finding that no authority supported his claim. He asserts textual and structural differences between the state and federal Constitutions indicate section 5 provides greater protections than the Sixth Amendment. He also contends that United States Supreme Court jurisprudence and legal scholarship establish the existence of a common-law rule requiring prior convictions be proven to a jury in 1859.

In *Albano*, we addressed an identical section 5 challenge. We determined that the defendant's section 5 claim should be analyzed independent of the Sixth Amendment. 313 Kan. at 644-45. However, we held that "the KSGA provisions authorizing the court to make criminal history findings for purposes of imposing a sentence do not violate section 5 because such judicial findings do not impair the traditional functions of the jury in Kansas criminal proceedings." 313 Kan. at 657. *Albano* disposes of Brown's section 5 challenge. Accordingly, we affirm the Court of Appeals decision as right for the wrong reason. See *State v. Bacon*, 309 Kan. 1235, 1239, 443 P.3d 1049 (2019) (affirming Court of Appeals as right for the wrong reason).

*III. Kansas' Criminal Restitution Scheme Implicates Section 5 of the Kansas Constitution Bill of Rights*

Finally, Brown argues that Kansas' criminal restitution scheme is unconstitutional under section 5 of the Kansas Constitution Bill of Rights or, alternatively, under the Sixth Amendment to the United States Constitution.

As with the previous issue, we have unlimited review over Brown's challenge to the constitutionality of Kansas' criminal restitution statutes. *Soto*, 299 Kan. at 121.

The statutory scheme governing criminal restitution in Kansas is composed of a variety of statutes spread amongst our criminal code and our civil procedure code. That statutory scheme authorizes judges to order criminal defendants to pay restitution as a part of sentencing. Judges are responsible for determining the amount of restitution, which includes, but is not limited to, damage or loss caused by the defendant's crime. See K.S.A. 2014 Supp. 21-6604(b)(1); K.S.A. 2014 Supp. 21-6607(c)(2). Once that judicial determination is made, the award becomes a civil judgment, which may be enforced the same as any other civil judgment. K.S.A. 2014 Supp. 21-6604(b)(2); K.S.A. 60-4301.

Brown argues that allowing a district court judge to determine the amount of restitution in a criminal case violates section 5. He contends that restitution, which compensates victims for the damages caused by a crime, is fundamentally a civil remedy. Because there was a common-law right to have juries determine civil damages, he asserts this common-law right was preserved under section 5. He thus reasons that Kansas' criminal restitution scheme implicates section 5 because it effectively allows a judge, rather than a jury, to determine civil damages.

In the alternative, Brown argues that criminal restitution constitutes punishment and thus he has a right to have a jury determine the amount of restitution under the Sixth

Amendment to the United States Constitution. Under that amendment, any fact, other than the fact of a prior conviction, which increases the statutory maximum penalty for a crime must be found by a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Brown claims that the criminal restitution statutes impermissibly allow judicial fact-findings to increase the statutory maximum penalty for a crime because the maximum restitution value would be zero in the absence of those fact-findings.

The Court of Appeals rejected both of Brown's arguments. The panel noted that this court had previously held that criminal restitution and civil damages are separate and independent remedies, thus criminal restitution is not subject to the right to a jury trial under section 5. *Brown*, 2020 WL 1897361, at *8 (quoting *State v. Applegate*, 266 Kan. 1072, 1078, 976 P.2d 936 [1999]). The panel also held that criminal restitution does not constitute punishment, and even if it did, it does not increase a defendant's maximum penalty for a crime, thus Sixth Amendment protections do not apply. *Brown*, 2020 WL 1897361, at *9.

Much like the previous issue, we recently addressed an identical constitutional challenge in *Arnett*, 314 Kan. at ___, 2021WL 4806611, at *3-8. There, we held that Kansas' criminal restitution statutes do not trigger the Sixth Amendment protections identified in *Apprendi* and its progeny. 314 Kan. at ___, 2021 WL 4806611, at *3. However, we held that our current statutory restitution scheme violates section 5 by converting restitution orders, in which a judge determines the damages proximately caused by the criminal act, into civil judgments, thus bypassing the traditional function of juries to determine civil damages. 314 Kan. at ___, 2021 WL 4806611, at *7. Even so, we held that the proper remedy was to sever the offending portions of the statutory scheme rather than vacate every judicially determined restitution order. 314 Kan. at ___, 2021 WL 4806611, at *7-8.

Brown is thus correct that the statutory scheme governing criminal restitution implicates section 5. However, once the unconstitutional provisions of that scheme are severed, Brown's original restitution order is constitutionally firm. He will not be subject to a civil judgment for his criminal restitution unless it is obtained separately through a civil cause of action. 314 Kan. at ___, 2021 WL 4806611, at *8. Thus, we affirm the district court's restitution order.

In conclusion, we hold that the Court of Appeals properly affirmed the district court's order denying Brown's *Batson* challenge. We also hold that the Court of Appeals properly rejected Brown's constitutional challenges to the KSGA and the district court's restitution order, albeit on different grounds than the panel relied upon. However, the Court of Appeals also vacated Brown's sentence after concluding it is illegal, and the State did not cross-petition for review of that holding. Thus, we remand the case to the district court for resentencing consistent with the panel's decision that Brown's prior Michigan juvenile adjudication for armed robbery was erroneously classified as a person felony.

The judgment of the Court of Appeals is affirmed; the judgment of the district court is affirmed in part and vacated in part, and the case is remanded with directions.

\* \* \*

STANDRIDGE, J., concurring in part and dissenting in part: For the reasons stated in my dissenting opinion in *State v. Arnett*, 314 Kan. __, No. 112,572, 2021 WL 4806611 (Kan. 2021), I respectfully dissent from the majority's analysis and conclusion on the issue of restitution.

ROSEN, J., joins the foregoing concurring and dissenting opinion.