NOT DESIGNATED FOR PUBLICATION

No. 126,036

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BLAKE DEAN MORGAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA S. LEWISON, judge. Submitted without oral argument. Opinion filed August 30, 2024. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., ISHERWOOD and PICKERING, JJ.

PICKERING, J.: Blake Dean Morgan appeals his convictions for possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia after a jury trial. Morgan claims the district court erred in denying his challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), to the State's peremptory strike of a Hispanic juror during jury selection. After reviewing the record, we find no error and affirm Morgan's convictions.

1

Riley County Police Officer Paul Terpstra stopped Morgan's car for a traffic violation. During the car stop, Terpstra smelled marijuana in the car, which provided probable cause to search Morgan's car. While searching the car, Terpstra found baggies of a crystalline substance and jars of a green leafy substance inside Morgan's backpack. The crystalline substance tested positive for methamphetamine, and the green leafy substance tested positive for marijuana. Terpstra also found unused baggies, a digital scale, and a metal grinder in Morgan's backpack. Elsewhere in the car, Terpstra found a hand-rolled marijuana cigarette and straws with white powdery residue.

The State charged Morgan with distribution or possession with intent to distribute methamphetamine; possession of drug paraphernalia—baggies and digital scale; possession of drug paraphernalia—rolling papers and grinder; and unlawful possession of marijuana. His criminal case proceeded to trial.

During jury selection for Morgan's trial, the prosecutor asked the jury pool who among them supported marijuana legalization. The prosecutor observed that "a lot" of people raised their hands. Throughout the rest of jury selection, the prosecutor called on five potential jurors to discuss why they supported marijuana legalization. One of those potential jurors who spoke was D.G., a Hispanic male. During peremptory strikes, the prosecutor struck those who spoke in support of marijuana legalization, including D.G.

Morgan launched a *Batson* challenge against striking D.G. on grounds of racial discrimination. The district court held a *Batson* hearing, where the prosecutor said that he struck D.G. because of D.G.'s statements supporting marijuana legalization. The district court stated that it would have found the prosecutor's justification as a "race-based reason" if only a few people had raised their hands to support marijuana legalization and the others had been struck. But because many people raised their hands and were not

2

struck, the district court said that it was "not going to find that that's a race neutral reason." Neither counsel attempted to clarify or correct the court's conflicting statements. After that finding, the district court moved to the third *Batson* step and required Morgan to show purposeful discrimination by the prosecutor. The court found that Morgan failed to show purposeful discrimination because the prosecutor had struck all of the potential jurors he had called on to speak about supporting marijuana legalization and there were still minorities left in the juror pool.

After a two-day trial, the jury convicted Morgan of simple methamphetamine possession instead of possession with intent to distribute, possession of drug paraphernalia—rolling papers and grinder, and possession of marijuana. The jury acquitted Morgan of possession of drug paraphernalia—baggies and digital scale. The district court sentenced Morgan to a controlling sentence of 20 months in prison.

MORGAN CONTINUES WITH HIS *BATSON* CHALLENGE ON APPEAL

*Preservation*

Both Morgan and the State raise preservation issues which must be addressed. Morgan claims that he preserved the district court's erroneous *Batson* analysis for appeal because he entered the *Batson* challenge at issue and the district court denied the challenge. The State responds that because Morgan failed to contemporaneously object to the district court's *Batson* analysis to allow the court to cure his claim of error, Morgan failed to preserve this issue for appeal. The State cites *State v. McCullough*, 293 Kan. 970, 270 P.3d 1142 (2012), and *State v. Angelo*, 287 Kan. 262, 197 P.3d 337 (2008), in support.

Although *Angelo* and *McCullough* both support a finding that Morgan failed to preserve this issue, in both cases the Supreme Court reached the merits of the appellants'

3

unpreserved *Batson* claims. See *McCullough*, 293 Kan. at 993-95; *Angelo*, 287 Kan. at 272-75. Moreover, other panels of this court have also discussed the merits of unpreserved *Batson* claims. See *State v. Villa-Vasquez*, 49 Kan. App. 2d 421, 435, 310 P.3d 426 (2013) (defendant did not object to district court's failure to complete third step of *Batson* analysis but panel proceeded to consider defendant's *Batson* challenge); *State v. Williams*, No. 102,615, 2010 WL 4156759, at *9 (Kan. App. 2010) (unpublished opinion) (same).

Without a defendant challenging a district court's analysis under *Batson*, a trial court does not have the opportunity to cure the defect. *McCullough*, 293 Kan. at 994. The *McCullough* court noted that even if the issue had been preserved, the defendant's claim failed because the district court's analysis was correct. Noting this, we review the merits of Morgan's *Batson* challenge.

*Standard of Review*

Challenges to the State's peremptory strikes under *Batson* are analyzed in three steps. Each step has its own standard of review. The district court's ruling at the first *Batson* step is subject to unlimited review. The district court's rulings at the second and third *Batson* steps are reviewed for abuse of discretion. *State v. Brown*, 314 Kan. 292, 298, 498 P.3d 167 (2021). The district court abuses its discretion if its decision is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). "An appeals court looks at the same factors as the trial judge, but is necessarily doing so on a paper record[,]" so review of factual determinations in a *Batson* hearing is "'highly deferential.'" *Flowers v. Mississippi*, 588 U.S. 284, 303, 139 S. Ct. 2228, 204 L. Ed. 2d 638 (2019).

*Analysis*

"'[I]n reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted.'" *Foster v. Chatman*, 578 U.S. 488, 501, 136 S. Ct. 1737, 195 L. Ed. 2d 1 (2016). The *Foster* Court further stated: "As we have said in a related context, '[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial . . . evidence of intent as may be available.'" 578 U.S. at 501. With that in mind, we review the district court's ruling based on the *Batson* three-step inquiry.

Under the first *Batson* step, the district court must determine whether the challenging party has made a prima facie showing of racial discrimination. If the challenging party establishes a prima facie case, the second *Batson* step requires the striking party to articulate a race-neutral nondiscriminatory reason for striking the juror at issue. The striking party satisfies this step if its reason is facially race neutral, even if it is not plausible or persuasive. If the striking party satisfies the second *Batson* step, the third *Batson* step requires the challenging party to show that the striking party's race-neutral reason is pretext for racial discrimination. At this step, the district court must assess the plausibility of the striking party's race-neutral reason in light of all the evidence. While the burden of production shifts between the first and second *Batson* steps, the challenging party always has the burden of persuasion. *Brown*, 314 Kan. at 297-98.

Courts may consider factors such as whether white jurors were struck for the same reason as minority jurors and whether other minorities remain on the jury when examining whether racial discrimination was a motivating factor for a peremptory strike. See *State v. Angelo*, 287 Kan. 262, 274, 197 P.3d 337 (2008); *State v. Williams*, 308 Kan. 1320, 1331, 429 P.3d 201 (2018) (whether other minorities remain on jury).

5

*Morgan's* Batson *Analysis Argument*

Morgan claims that because the district court stated that the prosecutor failed to produce a race-neutral reason for striking D.G. but still required him to show pretext under the third *Batson* step, the court committed structural error. Morgan asserts that, instead, the district court should have sustained his *Batson* challenge at the second step. Morgan asks us to reverse and remand for a new trial. The State counters that the district court did not unequivocally find that the prosecutor failed to articulate a race-neutral reason for striking D.G.

*The State's* Batson *Analysis Argument*

The State argues that, during the second step, the district court erred in its credibility finding of the prosecutor's reason for striking D.G. rather than making the finding that the prosecutor's reason "was race-neutral on its face" and then proceeding to the third *Batson* step. The State asks us to review the district court's second-step analysis under any of the three preservation exceptions. The State contends that we can review whether the prosecutor articulated a facially race-neutral reason for striking D.G. The State further contends that because the district court did not unequivocally find a race-based strike and because the jury returned a just verdict, review of this issue is necessary to serve the ends of justice.

Morgan claims that because the State did not cross-appeal the district court's second-step *Batson* finding, we are bound by the district court's statement that it was "not going to find that that's a race neutral reason." In response, the State explains that because there was no adverse ruling and a cross-appeal would lack statutory authority, it could not have cross-appealed the district court's second-step *Batson* finding. We agree with the State regarding its limited ability to cross-appeal. See K.S.A. 22-3602(b); *State v. Mulleneaux*, 316 Kan. 75, 80, 512 P.3d 1147 (2022).

*Discussion*

During the *Batson* hearing, Morgan's prima facie showing was that D.G. was a Hispanic male and Morgan believed there were four to five racial minorities in the venire panel. Morgan claimed that the prosecutor used 2 of his 11 strikes on minorities. Morgan believed D.G. could have been some race besides Hispanic, but D.G. was "[d]efinitely not light-skinned." The district court and prosecutor both stated that they did not notice that D.G. was a minority.

Although the district court did not explicitly find that Morgan showed a prima facie case of racial discrimination, the court did move to the second step of the analysis, asking the prosecutor to provide a race-neutral reason for striking D.G. The prosecutor responded that he struck D.G. over his spoken support for marijuana legalization and that he had struck at least three other jurors for the same reason. A review of the record shows that every juror that the prosecutor had called on to speak in favor of marijuana legalization was either excused or struck. The district court then engaged the prosecutor regarding the number of jurors who supported marijuana legalization and the number of jurors struck.

"THE COURT:  Okay. . . . [T]here were lots of people that raised their hands to say that they were in favor of [marijuana] legalization. [D.G.] just happened to be one of the few that spoke.
"[THE STATE]:  Right, but that in itself is a race neutral reason. When you look at juror number 1, [T.W.], she answered the question the same way. She's white, and I struck her."

The district court later examined the prosecutor's reason for striking D.G. while making its second-step *Batson* finding.

"I would say half, if not more than the jury panel raised their hands to say that they were in favor of legalization of marijuana and [D.G.] was one of the people that spoke, but if I remember correctly [the prosecutor] was randomly calling on people. It wasn't that anyone was waving their hand particularly enthusiastically, or anything. So I would probably find that was a race-based reason if there had only been a small number [of people supporting marijuana legalization] and the others had been struck, but in light of the fact that there were lots of people on the jury that raised their hand to that question that had not been struck, I'm not going to find that that's a race neutral reason."

The district court found the prosecutor's reason was race-neutral and stated its reasoning:  "So I would probably find that was a race-based reason *if* there had only been a small number [of people supporting marijuana legalization] and the others had been struck[.]" (Emphasis added.) But, the court noted, many in the jury panel supported legalized marijuana. Here, when D.G. along with at least three other jurors all spoke in support for marijuana legalization, the State—with its limited number of strikes—struck those who voiced their support for marijuana legalization.

As *McCullough* states, the State's reason "must be facially valid, but it does not need to be persuasive or plausible. The reason offered will be deemed race neutral *unless* a discriminatory intent is inherent in the explanation." (Emphasis added.) 293 Kan. at 992. The State's reason for striking D.G. and others for their spoken support of legalized marijuana does not contain a discriminatory intent, particularly given that the State was prosecuting Morgan for possession of marijuana. We deem the State's reason sufficiently race neutral.

Then the district court stated, "There is another step, though, and that is that the defendant has to establish that it was purposeful discrimination." Notably, Morgan did not object at this point. It seems both parties acquiesced to the district court moving on to step three. At that point, Morgan argued that D.G. was the only minority on the panel who raised a hand supporting marijuana legalization, that D.G. was one of only a few

8

jurors struck for that reason, and that D.G. was one of the prosecutor's first peremptory strikes.

The prosecutor responded that he had struck three other jurors who supported marijuana legalization before striking D.G. The prosecutor also said that he only made notes on the jurors he had called on, not on everyone who raised their hands. The prosecutor did not know if any other minorities on the jury panel raised their hands to support marijuana legalization.

Morgan noted that C.H.—an African-American male—also raised his hand but the prosecutor did not call on him. The district court said that because the prosecutor had not struck C.H., it was less likely that the prosecutor racially discriminated against D.G. The record shows that C.H. was ultimately selected to the jury. The court found that Morgan failed to show pretext under the third *Batson* step and denied the *Batson* challenge. Neither Morgan nor the State objected to the district court's *Batson* analysis at any point.

As the State suggests, the record shows that the district court likely misspoke during its analysis of the second *Batson* step. The court contradicted itself when it said it would find a "race-based" reason if only a few jurors supported marijuana legalization and all were struck but then purportedly reached the same conclusion because many jurors supported marijuana legalization and only a few were struck. The State contends that the district court "meant to say, 'I'm not going to find that that's a race-based reason'" instead of "'I'm not going to find that that's a race neutral reason.'" The State's argument is supported by the court's proceeding to the third step in its *Batson* analysis. Our caselaw states that "the prosecution's ability to articulate a race-neutral explanation simply advances the discussion to the third step for the trial court to decide whether defendant has carried the burden of proving purposeful discrimination." *McCullough*, 293 Kan. at 993-94. Here, the district court proceeded to the third *Batson* step without objection. The

court ultimately found that Morgan failed to show pretext and overruled Morgan's *Batson* challenge, still without objection.

Another panel of this court found a district court's *Batson* analysis sufficient despite being unclear in its second-step ruling. See *State v. Munoz*, No. 115,590, 2017 WL 4081374, at *7 (Kan. App. 2017) (unpublished opinion) (finding despite no explicit ruling, district court impliedly found prosecutor's reasons race neutral by moving to third *Batson* step). Courts in other jurisdictions have reached the same conclusion when district courts failed to give explicit rulings at the second *Batson* step. See *Jacox v. Pegler*, 266 Neb. 410, 416, 665 N.W.2d 607 (2003) (finding district court impliedly found articulated reason race neutral by moving to third *Batson* step); *Lopez v. State*, 940 S.W.2d 388, 390-91 (Tex. Ct. App. 1997) (finding district court impliedly found prosecutor's reason race neutral by overruling *Batson* challenge without explicit race-neutral finding); *Reich-Bacot v. State*, 789 S.W.2d 401, 403 (Tex. Ct. App. 1990) (same).

Similarly, here, the district court proceeded through all three *Batson* steps even with its likely misspoken second-step ruling. The court did so without objection by either party. Thus, we find that the district court impliedly found the prosecutor's reason to be race neutral at the second *Batson* step. Such a conclusion is further supported by the fact that the prosecutor's reason did not "relate to a characteristic of a particular race." See *State v. Gonzalez*, 311 Kan. 281, 303, 460 P.3d 348 (2020).

The record also shows that the district court blended the second and third *Batson* steps by examining the credibility of the prosecutor's argument before moving to the third step. However, in other cases, district courts have blended the last two steps by overruling *Batson* challenges immediately after making explicit race-neutral findings with no explicit pretext findings. Our Supreme Court and other panels of this court have affirmed those rulings. See *McCullough*, 293 Kan. at 994-95 (finding district court impliedly considered third *Batson* step by considering prosecutor's reason and defense's

10

rebuttal before overruling *Batson* challenge); *Angelo*, 287 Kan. at 274-75 (same); *Villa-Vasquez*, 49 Kan. App. 2d at 435 (same); *Williams*, 2010 WL 4156759, at *8-9 (same).

At the third *Batson* step, the record does not indicate that the prosecutor used D.G.'s support for marijuana legalization as pretext to racially discriminate against him. The record shows that the prosecutor was not aware that D.G. was a minority until Morgan raised his *Batson* challenge. Additionally, the prosecutor had struck or excused every prospective juror—including white jurors—he had previously called on to explain their support for marijuana legalization. See *State v. Kettler*, 299 Kan. 448, 464, 325 P.3d 1075 (2014) (factors at third *Batson* step include whether nonminority jurors were struck for same reason as minority jurors); see also *United States v. Prince*, 647 F.3d 1257, 1261 (10th Cir. 2011) ("*Batson* does not extend to the exclusion of jurors based on their beliefs regarding marijuana legalization.").

Here, the record indicates that the prosecutor called on jurors randomly, not that he picked out certain jurors for questioning. Moreover, C.H., a minority who raised his hand that he supported the legalization of marijuana but was not called on, did serve on the jury. Our Supreme Court has stated that factors at the third *Batson* step include whether other minorities remain on the jury. See *Williams*, 308 Kan. at 1331. In light of these facts, the district court did not abuse its discretion in finding that Morgan failed to meet his burden to show pretext at the third *Batson* step. Accordingly, the district court did not abuse its discretion in overruling Morgan's *Batson* challenge.

Affirmed.

11